## NATIONAL LABOR RELATIONS BOARD *v.*
## RELIANCE FUEL OIL CORP.

No. 88.   Argued December 3, 1962.—Decided January 7, 1963.

*Louis F. Claiborne* argued the cause for petitioner.   On the brief were *Solicitor General Cox, Stuart Rothman, Dominick L. Manoli, Norton J. Come* and *Solomon I. Hirsh.*

*Samuel H. Borenkind* argued the cause for respondent. With him on the brief was *Frank J. Mercurio.*

PER CURIAM.

The Reliance Fuel Oil Corporation, respondent herein, was found by the National Labor Relations Board to have committed certain unfair labor practices in violation of the National Labor Relations Act, 49 Stat. 449, as amended, 29 U. S. C. § 151 *et seq.*   Jurisdiction before the Board was predicated upon the fact that Reliance, a New York distributor of fuel oil whose operations were local,[1] purchased within the State a "substantial amount" of fuel

---

[1] In 1959 Reliance purchased a few hundred dollars worth of truck parts in New Jersey, but the Board did not rely on such transactions to sustain its assertion of jurisdiction.

oil and related products from the Gulf Oil Corporation, a supplier concededly engaged in interstate commerce. Most of the products sold to Reliance by Gulf were delivered to Gulf from without the State of New York and prior to sale and delivery to Reliance were stored, without segregation as to customer, in Gulf's tanks located within the State. During the fiscal year ending June 30, 1959, Reliance had gross sales in excess of $500,000 [2] and, during the calendar year 1959, it purchased in excess of $650,000 worth of fuel oil and related products from Gulf.

The Board adopted its trial examiner's findings that the operations of Reliance "affected" commerce within the meaning of the Act and that the unfair labor practices found tended "to lead to labor disputes burdening and obstructing commerce and the free flow of commerce . . . ." 129 N. L. R. B. 1166, 1171, 1182. The Court of Appeals reversed, 297 F. 2d 94, because, in its view, the record before the Board did not adequately demonstrate the existence of jurisdiction and remanded the case to the Board so that it might "take further evidence and make further findings on the manner in which a labor dispute at Reliance affects or tends to affect commerce." The only issue before this Court is whether on the record before it the Board properly found that it had jurisdiction to enter an order against Reliance; the substantive findings as to the existence of the unfair labor practices are not here in dispute.

Under § 10 (a) of the Act, the Board is empowered "to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce." Section 2 (6) defines "commerce" to mean "trade, traffic,

---

[2] Since the Board apparently treated Reliance as a "retail" concern, this amount of gross sales met its self-imposed standard for exercise of jurisdiction. 129 N. L. R. B. 1166, 1170–1171.

commerce, transportation, or communication among the . . . States . . ." and § 2 (7) declares:

"The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

This Court has consistently declared that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause. See, *e. g., Guss* v. *Utah Labor Board,* 353 U. S. 1, 3; *Polish Alliance* v. *Labor Board,* 322 U. S. 643, 647–648; *Labor Board* v. *Fainblatt,* 306 U. S. 601, 607. Compare *Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, 480. The Act establishes a framework within which the Board is to determine "whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress. Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce." *Polish Alliance* v. *Labor Board,* 322 U. S., at 648. See also *Labor Board* v. *Fainblatt,* 306 U. S., at 607–608.

That activities such as those of Reliance affect commerce and are within the constitutional reach of Congress is beyond doubt. See, *e. g., Wickard* v. *Filburn,* 317 U. S. 111. Through the National Labor Relations Act, ". . . Congress has explicitly regulated not merely transactions or goods in interstate commerce but activities

which in isolation might be deemed to be merely local but in the interlacings of business across state lines adversely affect such commerce." *Polish Alliance* v. *Labor Board,* 322 U. S., at 648. This being so, the jurisdictional test is met here: the Board properly found that by virtue of Reliance's purchases from Gulf, Reliance's operations and the related unfair labor practices "affected" commerce, within the meaning of the Act. The judgment of the Court of Appeals accordingly must be and is reversed.

MR. JUSTICE BLACK concurs in the result.