**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CITIZENS HOTEL COMPANY d/b/a Texas Hotel, Respondent.**

No. 19073.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1963.

Rehearing Denied March 13, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Atty., Stuart Rothman, Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

G. W. Parker, Jr., Stone, Parker, Snakard, Friedman & Brown, Fort Worth, Tex., for respondent.

Before JONES, WISDOM and GEWIN, Circuit Judges.

JONES, Circuit Judge.

The National Labor Relations Board found that the respondent, Citizens Hotel Company, doing business as Texas Hotel, had violated Section 8(a) (1) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq., by interference with and coercion of employees in the exercise of rights guaranteed by the Act; and had violated Section 8(a) (3) and (1) of the Act by wrongfully discharging employees for engaging in union activity. The Board issued its customary cease and desist order and directed reinstatement with back pay of the discharged employees. 131 N.L.R.B. 834. The Board seeks enforcement of its order.

There is little dispute as to the evidentiary facts but the sufficiency of them to sustain the Board's findings is challenged. In the latter part of July, 1960,

the Cooks, Waiters, Waitresses & Bartenders Union, Local 748, undertook to organize the employees of the respondent. Acting on instructions from respondent's catering manager, a supervisor and an employee of respondent attended a union meeting held for respondent's employees. Following the meeting the manager interviewed these two and asked who attended the meeting and what took place. Some days later a housekeeper, who was a supervisor within the meaning of the Act, asked the employee who attended if any of the maids under her supervision were at the meeting. An affirmative answer was given but no names. The housekeeper told the employee that she knew maids Johnson and Williams had attended. At other times the housekeeper questioned other employees about union activities but learned nothing. Johnson and Williams were dismissed and told their dismissal was because the 6th floor on which they worked was being closed and because work was getting slack. However, after their dismissal new maids were hired and maids with less seniority than the two dismissed continued to work. While the 6th floor was closed, maids were used to clean and renovate it. On this evidence it was determined that the respondent had violated Section 8(a) (1) of the Act by engaging in surveillance of union organizational meetings, by fostering the impression that it was engaged in surveillance, by instructing an employee to engage in surveillance, and by thereafter interrogating him as to what he observed at the union meeting. The Board found that Johnson and Williams were discharged for union activity and membership, in violation of Section 8(a) (3) and (1) of the Act.

At the outset the respondent challenged the Board's jurisdiction, contending that it is not engaged in commerce within the meaning of the Act. The Board's findings of the jurisdictional facts are in these words:

"Respondent, a Texas corporation with its principal office and its place of business in Fort Worth, Texas, is engaged in the business of operating a hotel. During the 12-month period preceding September 28, 1960, its gross revenue was in excess of $500,-000, and 84 percent of its hotel guests were transients who remained at Respondent's hotel less than 30 days. Respondent purchased from local suppliers liquor with a value in excess of $50,000, that had its origin outside the State of Texas."

At one time it was the Board's policy to decline jurisdiction of cases where the employer was a hotel operator. Under what the Board regarded as the compulsion of Hotel Employees Local No. 225 v. N. L. R. B., 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143, it revised its policy and its present jurisdictional formula for application in cases involving hotels is thus stated:

"[T]hough we have determined to assert jurisdiction in cases arising within the hotel industry, we find that it will effectuate the policies of the Act to limit assertion of jurisdiction to those cases involving hotel and motel enterprises, exclusive of permanent or residential hotels and motels, which receive at least $500,-000 in gross revenues per annum." Floridan Hotel, Inc., 124 N.L.R.B. 261, 264.

The gross revenues of the respondent exceed $500,000 per annum. While this case was pending before us, but prior to argument, the case of Reliance Fuel Oil Corporation v. N. L. R. B., 2nd Cir. 1961, 297 F.2d 94, was decided. The respondent pointed out the close parallel of the Reliance fact situation with that before us and strongly urged that we should follow it and decide that the Board was without jurisdiction. The Reliance company was a dealer of fuel oil in the State of New York selling only to customers in New York. It purchased from Gulf Oil Corporation, a producer and distributor in interstate commerce of petroleum products, fuel oil and related products of a value of over $650,000, substantially all of which was shipped from out of the State to Gulf's tanks in New York from which deliveries were made to Reliance.

The Court of Appeals held that the volume of purchases by an employer of products originating outside the state of the employer's business does not necessarily affect commerce within the meaning of the Act.

 The Supreme Court granted certiorari to review the Reliance Fuel Oil Corporation case and we deferred our decision pending the Supreme Court's opinion. That opinion was rendered January 7, 1963. 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279. The Supreme Court held that the operations of Reliance and the related unfair labor practices "affected" commerce within the meaning of the Act. In its opinion the Supreme Court reiterated its declaration "that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause," and that under the Act "the Board is to determine 'whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress.'" Applying the principles announced by the Supreme Court, it is clearly apparent that the Board had jurisdiction of the matter from which this review has its origin, and to enter the order of which it here seeks enforcement.

 On the merits, it is contended by the respondent that the Board's findings of interference, restraint and coercion, and its findings of the discriminatory discharge of employees, are not supported by substantial evidence. It is not necessary to discuss the testimony of the various witnesses or to make an analysis of the Board's reasoning in the making of its findings. The inferences which the Board has drawn in its determination of the purposes of the respondent in its surveillance and interrogation of its employees in their union activities and of its motives in discharging employees Johnson and Williams were permissible and warranted by the testimony before it. The findings are supported by substantial evidence on the record as a whole. The order of the Board will be

Enforced.