**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Edward ALEXANDER, d/b/a Strand Theatre, K.I.M.Y.B.A. Corp., Respondent.**

**No. 78–1629.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1979.

Decided April 17, 1979.

Andrew F. Tranovich of N. L. R. B., Washington, D. C., for petitioner; Allison W. Brown, Jr., and Jerrold J. Wohlgemuth, Attys., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on the brief.

Benjamin S. Houge of Houge & Mosher, Minneapolis, Minn., for respondent.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

GIBSON, Chief Judge.

The National Labor Relations Board petitions for enforcement of its order against Edward Alexander, doing business as Strand Theatre, K.I.M.Y.B.A. Corp. (hereinafter referred to as respondent) entered May 8, 1978, wherein the Board affirmed the rulings, findings, and conclusions of the administrative law judge and adopted his recommended order. The administrative law judge found that respondent violated section 8(a)(3), (5), and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), (5), and (1) (1973), by terminating the collective bargaining relationship, refusing to bargain in good faith, and unlawfully locking out or discharging employees because of their union membership or support. The administrative law judge recommended ordering respondent to cease and desist from engaging in unfair labor practices in violation of section 8(a)(3), (5), and (1) and to take certain affirmative action including making employees whole for losses and recognizing and bargaining with the representative union.

Respondent resists enforcement solely on the ground that the Board improperly asserted jurisdiction; he does not contest the Board's findings of substantive violations of section 8(a)(3), (5), and (1) or the appropriateness of the ordered remedy.

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation.

Respondent is and has been engaged in the operation of motion picture theatres in the state of Minnesota, and operated a motion picture theatre in Duluth, Minnesota, under the trade name Strand Theatre and K.I.M.Y.B.A. Corp., which is the facility involved in the unfair labor practice charges. Respondent refused to either admit or deny most of the jurisdictional allegations of the Board's complaint.[1] His basis for this refusal was the privilege against compulsory self-incrimination provided by the fifth amendment of the United States Constitution. On the same basis, Edward Alexander refused to comply with a subpoena duces tecum issued by the Board requesting jurisdictional information and refused to testify regarding that subject before the administrative law judge. The Duluth theatre features X-rated films and respondent sought to avoid providing information that might be used in a potential obscenity prosecution.[2]

Since respondent declined to provide jurisdictional evidence, the Board presented the administrative law judge with secondary evidence establishing respondent's involvement in interstate commerce. The parties do not dispute the Board's conclusion that respondent engaged in sufficient interstate activity affecting commerce to meet the requirements for statutory jurisdiction over him,[3] as contrasted with the requirements of the Board's self-imposed jurisdictional standard, which requires an annual gross volume of business of at least $500,000, *Motion Picture Machine Operators Local Union 330, AFL–CIO (Western Hills Theatres, Inc.),* 204 N.L.R.B. 1057 (1973). Nor does either party maintain that the Board's evidence supplied a sufficient basis to meet the Board's discretionary jurisdictional standard for motion picture theatres.[4]

The Board disregarded its discretionary jurisdictional standards on the basis of a policy first articulated in *Tropicana Products, Inc.,* 122 N.L.R.B. 121 (1958). In *Tropicana,* the Board asserted jurisdiction, stating:

> The Board has determined that it best effectuates the policies of the Act, and promotes the prompt handling of cases, to assert jurisdiction in any case in which an employer has refused, upon reasonable request by Board agents, to provide the Board or its agents with information relevant to the Board's jurisdictional determinations, where the record developed at a hearing, duly noticed, scheduled and held, demonstrates the Board's statutory jurisdiction, irrespective of whether the record demonstrates that the Employer's

---

1. The complaint stated in part:
   (c) During the year ending December 31, 1976, which period is representative of its operations during all times material herein, the Respondent, in the course and conduct of its business operations, purchased and caused to be transported and delivered to its business operations, goods and materials valued in excess of $50,000, of which goods and materials valued in excess of $50,000 were transported and delivered to its business operations located within the State of Minnesota directly from points located outside the State of Minnesota.
   (d) The Respondent is now and has been at all times material herein an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

2. The interstate transportation of obscene matter is an essential ingredient of some federal obscenity offenses. 18 U.S.C. §§ 1462 and 1465.

3. The National Labor Relations Act vests the Board with "the fullest *jurisdictional* breadth constitutionally permissible under the Commerce Clause." *NLRB v. Reliance Fuel Oil Corp.,* 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963). *See also Polish National Alliance v. NLRB,* 322 U.S. 643, 646–48, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944); *NLRB v. Erlich's 814, Inc.,* 577 F.2d 68, 70 (8th Cir. 1978); 29 U.S.C. §§ 160(a), 152(6) and (7).

4. Respondent denied the allegation in the complaint which stated:
   (b) During calendar year 1976, which period is representative of its operations during all times material herein, the Respondent, in the course and conduct of its business operations, derived gross revenues in excess of $500,000.
   He refused, however, to provide any information regarding the gross volume of business and the record lacks any evidence on this subject.

operations satisfy the Board's jurisdictional standards.

122 N.L.R.B. at 123.

Respondent argues that the *Tropicana* doctrine should not apply when the employer's refusal to provide jurisdictional information is premised upon the privilege against compulsory self-incrimination because the application of the doctrine in this situation would inflict a substantial penalty on respondent because he chose to exercise his fifth amendment rights. This argument misconstrues the basis for applying the *Tropicana* doctrine and incorrectly characterizes an order imposed to remedy unfair labor practices as a penalty addressed to the exercise of a constitutional right.

The Board asserted jurisdiction pursuant to an established policy which is totally unrelated to the fifth amendment privilege against compulsory self-incrimination. This policy serves the objectives of the National Labor Relations Act by permitting the Board to conserve its resources when undertaking to meet its burden of proving jurisdiction and is consistent with the basic reasons for adopting the discretionary jurisdictional standards. As the Board stated in *Tropicana*, 122 N.L.R.B. at 123:

> These standards were adopted by the Board, *inter alia*, as an administrative aid to facilitate its jurisdictional determinations in order that it might reduce the amount of time and energy expended in the investigation of jurisdictional questions, so that it might concentrate its energies on substantive issues in the many important cases coming before it and thus increase its case-handling capacity. The adoption of such standards in no way precludes the Board from exercising its statutory authority, in any properly filed case, where legal jurisdiction alone is proven, if the Board is satisfied that such action will best effectuate the policies of the Act.

The purpose of the *Tropicana* doctrine is to avoid delay in processing cases and to channel resources toward investigating and remedying substantive labor law violations. While establishing the doctrine may have encouraged employers voluntarily to provide information regarding jurisdiction, the effect of applying the doctrine in any particular case is merely to expedite the processing of that case and minimize the resources expended to meet the Board's burden of asserting jurisdiction.

■ The Board is not bound by its self-imposed guidelines, and even when it disregards these guidelines on simply an *ad hoc* basis, the courts should not intervene unless compelled to do so by extraordinary circumstances or to correct an abuse of discretion. *NLRB v. Erlich's 814, Inc.,* 577 F.2d 68, 71 (8th Cir. 1978); *NLRB v. Timberland Packing Corp.,* 550 F.2d 500, 501 (9th Cir. 1977), *cert. denied,* 434 U.S. 922, 98 S.Ct. 397, 54 L.Ed.2d 279 (1978); *Glen Manor Home for Jewish Aged v. NLRB,* 474 F.2d 1145, 1149 (6th Cir.), *cert. denied,* 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973); *NLRB v. Okla-Inn,* 488 F.2d 498, 500 (10th Cir. 1973); *NLRB v. City & County Electric Sanitary Sewer Service, Inc.,* 467 F.2d 209 (8th Cir. 1972); *NLRB v. Marinor Inns, Inc.,* 445 F.2d 538, 541 (5th Cir. 1971); *NLRB v. Carpenters Local No. 2133,* 356 F.2d 464 (9th Cir. 1966).

In the instant case, the union representing respondent's employees filed an unfair labor practice charge with the Board. The Board, after preliminary investigation, issued a complaint that contained allegations designed to provide a basis for jurisdiction. When respondent failed to admit or deny these allegations, or provide information relating to them, the Board was called upon to establish jurisdiction. It met this burden by following an established policy to investigate only to the extent necessary to present evidence of statutory jurisdiction. By proceeding according to this established practice, the Board provided uniform treatment to employees charged with unfair labor practices and avoided drawing inferences from the exercise of the privilege against compulsory self-incrimination regarding the underlying facts which respondent chose not to divulge.

The cases cited by respondent are inapposite. In *Lefkowitz v. Cunningham,* 431 U.S.

801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), *Uniformed Sanitation Men Assn., Inc. v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), and *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the persons asserting the privilege against compulsory self-incrimination faced rules designed to coerce them to waive their constitutional privilege. If they refused to waive this privilege, the law subjected them to a severe and substantial penalty, generally in the form of forfeiture of employment. These rules were formulated specifically to compel persons to waive their constitutional rights and imposed severe sanctions directly in response to the exercise of the constitutional right. The Supreme Court has indicated that the *Garrity-Lefkowitz* decisions apply narrowly to situations "where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to other evidence, resulted in loss of employment or opportunity to contract with the State." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1975). They do not apply when the facts do "not smack of an invalid attempt * * to compel testimony without granting immunity or to penalize the exercise of the privilege." *Id.* In the instant case, the Board's *Tropicana* doctrine is unrelated to the privilege against compulsory self-incrimination, and respondent has not been penalized for his exercise of his fifth amendment privilege.

Respondent argues that the sanctions imposed by the Board constitute a penalty exacted because of his exercise of his fifth amendment privilege. The sanctions, however, do not relate to the exercise of the privilege against compulsory self-incrimination, but seek to remedy unfair labor practices found to have been committed by respondent, which finding he does not contest. The sanctions respondent refers to include making employees whole for losses they may have suffered because of their unlawful termination, refraining from discharging employees, posting notices admitting that respondent violated the National Labor Relations Act, and being compelled to bargain with the representative union. The administrative law judge formulated these remedies to deal with a labor problem, and the order itself reflects careful tailoring to meet respondent's unfair labor practices.

Respondent also seems to contend that the Board was obligated to follow the procedures to compel testimony outlined in 29 C.F.R. § 102.31[5] rather than present evidence to establish statutory jurisdiction. This argument is meritless. The section clearly contemplates the exercise of Board discretion and the Board is not obligated to compel testimony whenever a party relies upon his fifth amendment privilege and thereby automatically immunize the party from subsequent criminal prosecution.

■ The Board determined that the assertion of jurisdiction in this case "will best effectuate the policies of the Act and promote the prompt handling of cases." The Board did not abuse its discretion in disregarding its self-imposed guidelines pursuant to its policy and practice established in *Tropicana*. Accordingly, we hold that the Board's assertion of jurisdiction was proper and grant enforcement of its order.

Order enforced.

---

5. 29 C.F.R. § 102.31 provides in pertinent part:

    (c) With the approval of the Attorney General of the United States, the Board may issue an order requiring any individual to give testimony or provide other information at any proceeding before the Board if, in the judgment of the Board, (1) the testimony or other information from such individual may be necessary to the public interest, and (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.