**NEW YORK COAT, SUIT, DRESS, RAINWEAR AND ALLIED WORKERS' UNION ILGWU, Plaintiff,**

v.

**SUSSEX SPORTSWEAR, INC., and Charles Alfano, Defendants.**

Civ. A. No. 84–0711.

United States District Court, M.D. Pennsylvania.

Aug. 16, 1984.

---

Charles W. Johnston, Handler, Gerber, Johnston, Strokoff & Cowden, Harrisburg, Pa., for plaintiff.

Joseph P. Giovannini, Jr., Wilkes-Barre, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

Defendants have filed a motion to dismiss for lack of jurisdiction. The complaint involves two counts, the first of which is based on the Labor Management Relations Act, 29 U.S.C. 141 *et seq.* and the second of which is based on the Pennsylvania Wage Payment and Collection Law, 43 P.S. 260.1, *et seq.* The facts which support both counts involve the non payment by defendant, Sussex Sportswear, of $3,191.32 in holiday pay to its employees. Plaintiff alleges that defendant has violated its collective bargaining agreement in two instances. First, defendant did not pay the $3,191.32 when the various holidays occurred. Second, the dispute was submitted to binding arbitration and after the impartial chairman ordered the defendant to pay, it still did not do so.

Defendants, in the motion to dismiss, argue that the court has no subject matter jurisdiction over the federal claim and no pendent jurisdiction over the state claim. We will not grant the motion to dismiss as to count one, but we will grant it as to count two with leave to plaintiff to amend.

■ Although the plaintiff bears the ultimate burden of proving jurisdiction, there is a natural reticence on the part of the court to grant a motion to dismiss an apparently colorable claim. Further, it is well established that when the court reviews a motion to dismiss, the allegations of the complaint are assumed to be true and are examined in a light most favorable to the plaintiff. *Pettus v. Veterans Administration Hospital Philadelphia,* 517

F.Supp. 656, 657 (E.D.Pa.1981). It has been held that "The applicable test for determining jurisdiction on the face of the pleadings is not whether the plaintiff could actually recover, but whether the Federal claim alleged is so patently without merit as to justify the District Court's dismissal for want of jurisdiction." *Sisk v. Texas Parks and Wildlife Department*, 644 F.2d 1056, 1058 (5th Cir.1981).

Plaintiff bases its first claim on the Labor Management Relations Act. That Act confers jurisdiction on United States District Courts to hear "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter." 29 U.S.C. § 185(a). "Affecting commerce" means "in commerce or burdening or obstructing commerce or the free flow of commerce or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 29 U.S.C. § 152(7).[1] Plaintiff has alleged that it is a labor organization representing employees and that defendant is an employer in an industry affecting commerce within the meaning of the Act. (Complaint, ¶ 2, 3).

 Defendants' motion to dismiss is based on its assertion that it is not an industry affecting commerce as defined by the Act, because it was involved in essentially intrastate activities during the times relevant to count one of the complaint. Plaintiff has clearly alleged a proper jurisdictional predicate for its lawsuit, however, and defense counsel's bald allegation to the contrary is not adequate to support a motion to dismiss. For this reason, we deny the motion to dismiss as to count one. For future reference, however, we note that case law on the meaning of "industry affecting commerce" establishes that a business which is engaged in intrastate activities can be found to be within the jurisdiction of the court. The United States Supreme Court in *NLRB v. Fainblatt*, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014 (1939) interpreted whether the National Labor Relations Act, which has since been amended by the National Labor Management Act, applied to an employer which was not itself engaged in interstate commerce, but which processed materials that had been and later would be distributed in interstate commerce. The Act, in both its original and its amended form seeks to prevent the disturbing of interstate commerce by labor disputes. In *Fainblatt* it was said:

> Examining the Act in light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis.
>
> There are not a few industries in the United States which, though conducted by relatively small units, contribute in the aggregate a vast volume of interstate commerce. Some, like the clothing industry, are extensively unionized and have had a long and tragic history of industrial strife. It is not to be supposed that Congress, in its attempted nationwide regulation of interstate commerce through the removal of the causes of industrial strife affecting it, intended to exclude such industries from the sweep of the Act.... [T]he test of ... jurisdiction is not the volume of interstate commerce which may be affected, but the existence of a relationship of the employer and his employees to the commerce such that ... a labor dispute [would burden or obstruct] commerce. (607–08, 59 S.Ct. at 672)

The court in *Local Joint Executive Board, Hotel and Restaurant Employees and Bartenders International Union v. Joden*, 262 F.Supp. 390 (D.Mass.1966) quoted *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963).

> This court has consistently declared that in passing the National Labor Relations Act, Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible un-

---

1. "Commerce" is defined as "trade, traffic, commerce, transportation, or communication

among the several States...." 29 U.S.C. § 152(6).

der the commerce clause ... Congress has explicitly regulated not merely transactions or goods in interstate commerce but activities which in isolation might be deemed to be merely local but in the interlacings of business across state lines adversely affect such commerce.

Id. at 394.

Thus, case law clearly indicates that an employer need not be in commerce to affect commerce. In *Reliance Fuel Oil* the court said that

[w]hether or not practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce.

371 U.S. at 226, 83 S.Ct. at 314.

We think it unlikely that plaintiff will be unable to establish that defendant industry affects commerce. The lack of subject matter jurisdiction is, moreover, a nonwaivable defense, which may be raised at any time. Rule 12(h)(3), Federal Rules of Civil Procedure. If at any time in the future course of this litigation it appears to us that jurisdiction is lacking on the basis of the principles discussed, the action will be dismissed.

Count two of the complaint, a pendent state claim, is based on Pennsylvania's Wage Payment and Collection Law, 43 P.S. 260.1 *et seq.*, and it is brought against an officer of Sussex Sportswear, Charles Alfano, a pendent party. No independent basis of federal jurisdiction against Charles Alfano is alleged.

The landmark case of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) elucidated the concept of pendent jurisdiction but concentrated largely on the propriety of joining state and federal claims rather than joining parties over whom federal jurisdiction exists with those parties over whom there is no independent jurisdictional basis. The Court in *Gibbs* stated,

The federal claim must have substance sufficient to confer subject matter jurisdiction on the court [citation omitted]. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues there is *power* in federal courts to hear the whole.

That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them [citation omitted]. . . .

*Id.* at 725–26, 86 S.Ct. at 1138–39, 16 L.Ed.2d at 227–28 (footnotes omitted) (brackets added). Following the pronouncements in the *Gibbs* case, pendent jurisdiction was increasingly exercised by federal courts. *Gibbs* did not, of course, address the precise issue before us: whether the doctrine of pendent jurisdiction may be used by the court to acquire jurisdiction over a party as to whom no independent basis of subject matter jurisdiction is alleged. That issue was addressed by the Court in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

In *Aldinger*, a plaintiff, formerly an employee in a county treasurer's office, had brought suit against the treasurer, the county, and others, alleging that her discharge from employment violated her rights under the Constitution. Jurisdiction was alleged pursuant to 28 U.S.C. § 1343(3).[2] The Court affirmed the lower

---

**2.** 28 U.S.C. § 1343(3) gives Federal District Courts original jurisdiction of any civil action to

court's dismissal of the claim against the county on the grounds that counties were excluded from the grant of jurisdiction contained in 42 U.S.C. § 1983 and therefore by implication from 28 U.S.C. § 1343.[3] In deciding that the exercise of pendent jurisdiction over the county as a pendent party was inappropriate the Court focused on the principle that federal courts, unlike state courts are courts of limited jurisdiction:

The question here, which it was not necessary to address in Gibbs ... is whether by virtue of the statutory grant of subject-matter jurisdiction, upon which petitioner's principal claim against the treasurer rests, Congress has addressed itself to the *party* as to whom jurisdiction pendent to the principal claim is sought.... [T]he question whether jurisdiction over the instant lawsuit extends not only to a related state-law claim, ... turns initially, not on the general contours of the language in Art III, i.e., "Cases ... arising under," but upon the deductions which may be drawn from congressional statutes as to whether Congress wanted to grant this sort of jurisdiction to federal courts.... Resolution of a claim of pendent-party jurisdiction, therefore, calls for careful attention to the relevant statutory language.... Two observations suffice for the disposition of the type of case before us. If the new party sought to be impleaded is not otherwise subject to federal jurisdiction, there is a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim. Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

427 U.S. at 16–18, 96 S.Ct. at 2421–2422, 49 L.Ed.2d at 287–89.

In a somewhat similar case, *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), a plaintiff brought a diversity action against a diverse defendant who then impleaded a defendant who was not diverse to the plaintiff. Plaintiff amended his complaint to bring a direct claim against the third party defendant. The original defendant was then dismissed from the suit. The Supreme Court reversed the lower court's denial of a motion to dismiss and held that that court had lacked ancillary jurisdiction. In so holding, the court found (1) that the claim was not truly ancillary, but new and independent, (2) the non federal claim was asserted by the plaintiff, who had chosen the federal forum and (3) the policy of the statute (28 U.S.C. § 1332) conferring diversity jurisdiction called for its strict construction. 437 U.S. 376–77, 98 S.Ct. at 2403–05, 57 L.Ed.2d at 283–84.

The precise methodology in analyzing the appropriateness of exercising jurisdiction over a pendent claim was outlined by the court in *Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 989–90 (3d Cir.1984) (footnotes omitted):

On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This "power" test depends on whether there is a "common nucleus of operative fact" between the state claim at issue and the accompanying federal claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As we see it, *Gibbs* provides the unifying principle which limits the extent of federal jurisdiction over both pendent and ancillary claims. The second level requires the court to determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, such as the requirement of complete diversity or the explicit exclusion of a particular party from federal liability for the actions alleged in the complaint.

redress a plaintiff's deprivation, under color of state law, of any rights secured by the Constitution or by a federal law.

**3.** 42 U.S.C. § 1983 provides for a civil action against any *person* who deprives another of civil rights under color of state law.

At this level, the court may consider whether the plaintiff's assertion of ancillary or pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes. The issue generally ·turns on statutory interpretation. The final level—prudential in character—is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim.

In *Ambromovage* the basis for the court's decision turned on the first tier of the analysis. In the case before us, our analysis focuses on the second tier—that addressed in *Aldinger* and *Owens Equipment.*

 As we read the two Supreme Court cases referenced, resolution of this issue turns on a close reading of the statute which confers jurisdiction as to the federal claim. If by the statutory language Congress explicitly or implicitly excluded a pendent party from the jurisdictional reach of the statute, then the court should refuse to exercise pendent jurisdiction. In this case, the statutory section conferring jurisdiction, 29 U.S.C. § 185, provides as follows:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

This language explicitly limits jurisdiction to suits alleging violations of contracts between employers and labor organizations. "Employer" is specifically defined in the Act as "any person acting as the agent of an employer...." 29 U.S.C. § 152(2).[4] The complaint fails to allege that defendant Alfano acted as an agent of the defendant

corporation in breaching the contract. Accordingly, the Act confers no jurisdiction over him and we must dismiss the pendent state claim.[5] Because there is the possibility, however, that plaintiff may be able to make such an allegation, we will give it leave to amend.

Based upon the foregoing opinion we will issue an appropriate order.

---

4. "Person" is defined, in part, as "one or more individuals...." *Id.* at 152(1). These definitions, taken from subchapter II of the Act, are made applicable to section 185 by 29 U.S.C. § 142(3).

5. The complaint does allege that Alfano is an officer of the corporation. (Complaint, ¶ 14). This is sufficient to make him an employer under the Pennsylvania law. *See* 43 P.S. § 260.-2(1).